UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAU CHEONG CHAN,<br><br>                            Petitioner,<br><br>v.<br><br>ALEJANDRO MAYORKAS, Secretary, United States Department of Homeland Security; et al.,<br><br>                          Respondents. | Case No.: 24-CV-1315 JLS (MSB)<br><br>**ORDER REQUIRING FURTHER RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241** |

      Presently before the Court is Petitioner Hau Cheong Chan's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Pet.," ECF No. 1). Also before the Court are Respondents Merrick Garland (United States Attorney General), Christopher LaRose (Warden, Otay Mesa Detention Center), Patrick Lechleitner (Acting Director, United States Immigration and Customs Enforcement), Alejandro Mayorkas (Secretary, United States Department of Homeland Security), and Jesus Rocha's (Acting Field Office Director, San Diego Field Office, United States Immigration and Customs Enforcement) (collectively, "Respondents") Return to Petition ("Return," ECF No. 5) and Petitioner's Traverse ("Traverse," ECF No. 6).

/ / /

/ / /

# BACKGROUND

Petitioner was born in Hong Kong, on October 15, 1955, when Hong Kong was a British colony. Pet. ¶ 19. He immigrated to the United States in 1973 as a Lawful Permanent Resident using a British passport. *Id.* ¶ 20. Petitioner has never resided in China nor possessed a Chinese passport or identity documents. Traverse at 2.

In 1988, Petitioner was convicted of multiple charges that culminated in a sentence of life in prison. Return at 2. In November 2023, Petitioner was released from prison following a decision by a parole board and the California appeals court that he did not pose a danger to the public. Traverse at 2; Pet. ¶ 22. On November 2, 2023, upon being released from prison, Petitioner was immediately detained by Immigration and Customs Enforcement ("ICE"). *Id.*; Pet. ¶ 23. On November 4, 2023, an Immigration Judge ordered Petitioner deported to Hong Kong; as Petitioner did not reserve appeal, his deportation order became final the same day. *Id.*; Return at 2; Pet. ¶ 24.

As a result, Petitioner is presently detained at the Otay Mesa Detention Center in San Diego, California. Pet. ¶ 26. After Petitioner was ordered deported, "an application to acquire travel documents was created and submitted for processing at the beginning of 2024." Return at 3; Declaration of Luis Valentin ("Valentin Decl.") ¶ 5, ECF No. 5-3. In March 2024, Petitioner received a Decision to Continue Detention that indicated his custody status had been reviewed and that ICE would not be releasing him, with another review to be conducted within 90 days—by June 3, 2024. Pet. ¶ 27. On March 19, 2024, "a second application to acquire travel documents for Petitioner was created and submitted for processing." Return at 3; Valentin Decl. ¶ 6.

On July 19, 2024, ICE served a decision on Petitioner, dated June 20, 2024, that it would continue his detention. Pet. ¶ 29. On August 9, the ICE Enforcement and Removal Operations ("ERO") San Diego field office submitted a travel document packet to the Consulate General of the People's Republic of China in Los Angeles. Return at 3. That same day, ERO's Removal and International Operations ("RIO") division presented this travel document packet to the ERO Assistant Attaché for Removals in Beijing, China for

presentation of the travel document packet to the Hong Kong Immigration Department. *Id.*

Petitioner has called the Chinese consulate from detention consistently following up on the application and has not received a response from China nor Hong Kong with respect to any of the three applications made by Respondents for a travel document. Traverse at 2.

## LEGAL STANDARD

To succeed on a habeas petition, a petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Under 8 U.S.C. § 1231, "when an alien is ordered removed from the United States, the Attorney General is obliged to facilitate that individual's actual removal within 90 days, a period called the 'removal period.'" *Xi v. I.N.S.*, 298 F.3d 832, 834–35 (9th Cir. 2002) (quoting 8 U.S.C. § 1231(a)(1)). "During the removal period, the Attorney General is required to detain an individual who has been ordered removed on certain specified grounds." *Id.* at 835 (citing 8 U.S.C. § 1231(a)(2)). "Congress, however, recognized that securing actual removal within 90 days will not always be possible. Consequently, [§ 1231] authorizes detention beyond the removal period[.]" *Id.* (citing § 1231(a)(6)). "[T]he statute 'does not permit indefinite detention.'" *Id.* at 836 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001)). Section 1231, "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689. The Attorney General may detain an alien subject to a final removal order for a "presumptively reasonable period" of six months. *Id.* at 701. After this six-month period, an alien's "continued detention is permissible if his removal is reasonably foreseeable." *Xi*, 298 F.3d at 839 (citing *Zadvydas*, 533 U.S. at 699–701).

The petitioner "has the burden to provide 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Id.* at 839–840 (quoting *Zadvydas*, 533 U.S. at 701). The petitioner's allegations must go beyond "the absence of an extant or pending repatriation agreement" and give "due weight to the likelihood of successful future negotiations." *Zadvydas*, 533 U.S. at 702 (citation and

internal quotation marks omitted). However, the allegations need not demonstrate "the absence of *any* prospect of removal." *Id.* "Once the [petitioner] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. The government may rebut the detainee's showing with "evidence of progress . . . in negotiating a petitioner's repatriation." *Kim v. Ashcroft*, No. 02CV1524-J (LAB), 2003 U.S. Dist. LEXIS 30818, at *11–12 (S.D. Cal. June 2, 2003) (citing *Khan v. Fasano*, 194 F. Supp. 2d 1134, 1136 (S.D. Cal. 2001); *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002)).

## ANALYSIS

Petitioner has now been detained for over a year, and he represents that during such time, neither he nor Respondents have received a response to the requests for travel documents, nor confirmation that a travel document is likely forthcoming. Traverse at 5. Petitioner argues the U.S. lacks a repatriation agreement with China as well as with Hong Kong. *Id.* at 3. Moreover, Petitioner points out he has never lived in China, nor held any identity documents issued by the Chinese government, complicating any efforts to obtain a travel document for him. Pet. ¶ 31.

Further, Petitioner cites various government reports describing difficulties obtaining travel documents from China spanning two decades. First, Petitioner cites a 2004 report by the United States General Accounting Office that notes ICE described "significant problems" obtaining travel documents from China which "consistently refused to issue travel documents." Traverse at 2–3, 3 n2 (citing United States General Accounting Office, *Immigration Enforcement: Better Data and Controls are Needed to Assure Consistency with the Supreme Court Decision on Long- Term Alien Detention* 21 (2004), http://www.gao.gov/assets/250/242498.pdf). Next, Petitioner points to a 2019 report by the Office of the Inspector General identifying China as one of a handful of countries that had been "consistently categorized" as uncooperative in executing removal orders. *Id.* at 3 & n3 (citing Office of the Inspector General, *ICE Faces Barriers in Timely Repatriation*

*of Detained Aliens* 19 n 32 (2019), https://www.oig.dhs.gov/sites/default/files/assets/2019-03/OIG-19-28-Mar19.pdf). Finally, Petitioner cites a 2022 announcement by the Embassy of People's Republic of China, indicating China suspended "cooperation on the repatriation of illegal immigrants" with the United States. *Id.* at 3 & n4 (citing Embassy of People's Republic of China, *The Ministry of Foreign Affairs Announces Countermeasures in Response to Nancy Pelosi's Visit to Taiwan* (August 5, 2022), http://us.china-embassy.gov.cn/eng/zmgx/zxxx/202208/t20220805_10735706.htm).

Respondents argue ICE has worked to acquire the necessary travel documents to execute Petitioner's deportation, and, as recently as August 9, 2024, submitted a new travel document request to the Consulate General of the People's Republic of China in Los Angeles. Return at 5. Respondents indicate the submission was elevated to the ICE headquarters who presented the travel document packet to the ERO Assistant Attaché for Removals in Beijing, China for presentation to the Hong Kong Immigration Department. *Id*. Respondents contend that issuance of a Hong Kong travel document is often time consuming, and timelines vary case by case, taking sometimes beyond 30 to 45 days to finalize processing. *Id.* Finally, Respondents assert, "Hong Kong Immigration Department has issued travel documents in other cases, and removals to Hong Kong have been successfully executed throughout the past six years," citing to the Declaration of Yolanda Harrison ("Harrison Decl." ¶ 7, ECF No. 7), which states that Hong Kong has issued "two travel documents to ICE" and references an ICE Annual Report demonstrating removals to Hong Kong. U.S. Immigration and Customs Enforcement, *ICE Annual Report Fiscal Year 2023* 96 (2023), https://www.ice.gov/doclib/eoy/iceAnnualReportFY2023.pdf (indicating fifteen individuals were removed to Hong Kong in Fiscal Year ("FY") 2018, seven in FY 2019, three in FY 2020, three in FY 2021, four in FY 2022, and four in FY 2023).

The Court finds Respondents have set forth evidence demonstrating attempts to secure travel documents for Petitioner's removal, and evidence revealing such travel documents have been secured before. However, Petitioner has now been detained for over

a year and it is unclear whether or when the Hong Kong Immigration Department will issue a travel document. The Court is particularly mindful that Petitioner need not demonstrate "the absence of *any* prospect of removal," *Zadvydas*, 533 U.S. at 702 (emphasis in original), and "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink," *id.* at 701.

Accordingly, the Court **ORDERS** Respondents to file a supplemental brief, not to exceed ten (10) pages, addressing the following items within fourteen (14) days of this Order:

1. The present status of, and any and all facts regarding, Respondents' efforts to secure travel documents for Petitioner from the Hong Kong Immigration Department or any other relevant authorities on the request for travel documents for Petitioner.

2. Any responses or communications from the Hong Kong Immigration Department, or other relevant authorities on the request for travel documents for Petitioner.

3. Any evidence of negotiations between the Hong Kong Immigration Department and Respondents, or other relevant authorities on the request for travel documents for Petitioner, relating to the approval of such travel documents.

4. Respondents' position as to whether there is any justification for Petitioner's detention if the Court were to find there is no significant likelihood of Petitioner's removal in the reasonably foreseeable future.

The Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (ECF No. 1) remains pending.

**IT IS SO ORDERED.**

Dated: December 18, 2024

Hon. Janis L. Sammartino
United States District Judge